

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| ALLSTATE VEHICLE AND PROPERTY | § | |
| INSURANCE COMPANY, | § | |
| Plaintiff, | § | |
| vs. | § | Civil Action No. 3:20-01300-MGL |
| | § | |
| KENNETH COLE GODLEY and | § | |
| CONSTANCE MAYERS, *as Personal* | § | |
| *Representative for the Estate of* | § | |
| *Darrius "George" Dreher*, | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER
GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.     INTRODUCTION

Plaintiff Allstate Vehicle and Property Insurance Company (Allstate) brought this declaratory judgment action against Defendants Kenneth Cole Godley (Godley) and Constance Mayers (Mayers), *as Personal Representative for the Estate of Darrius "George" Dreher* (Dreher) (collectively, the Defendants), seeking an order from the Court declaring it has neither a duty to defend nor a duty to indemnify Godley for the claims and damages asserted in an underlying state-court negligence lawsuit.   The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a).

Pending before the Court is Allstate's motion for summary judgment.   Having carefully considered Allstate's motion, the responses, the reply, the responses to the Court's order to show

cause, the record, and the applicable law, it is the judgment of the Court Allstate's motion will be granted.

## II.    FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of June 18, 2017, a Jeep SUV owned by Samuel Bird, and being operated by nineteen-year-old Logan Bird (Logan), hit Dreher as he walked along Westoods Drive in Chapin, South Carolina. Logan was allegedly intoxicated, and the impact of the Jeep SUV striking Dreher resulted in his death.

Logan and her friend Godley purportedly attended numerous parties the previous day, June 17, 2017. At approximately 10:00 AM on that day, Logan and Godley apparently attended a party at the home of Trip, Lyn, and James Coleman Hunter (the Hunters). The Hunters supposedly served alcohol to the attendees of the party.

Thereafter, Logan and Godley allegedly traveled to the residence of Kimberly and Mark McMillian (the McMillians), where alcohol was made available to everyone. Logan and Godley ostensibly proceeded to board a boat owned by Trip and Lyn Hunter and consumed alcohol. Next, Logan and Godley purportedly visited Sandy Beach where alcohol was made available to them.

Logan and Godley then allegedly returned to the Hunters' home at approximately 3:30 PM and partied until 5:00 PM, at which time they went to a restaurant. After leaving the restaurant, Logan and Godley apparently traveled to a party at the home of Ayden Phillips, where alcohol was readily available to everyone. Next, Logan and Godley supposedly traveled to a party at Godley's home at approximately 8:00 PM, where alcohol was supplied to those in attendance. Shortly after Logan left Godley's home the following morning, the deadly accident occurred.

2

Mayers filed a complaint in the Lexington County Court of Common Pleas alleging negligence and negligence per se against multiple parties, including Godley, involved with the partying that occurred on June 17, 2017. At the time of the accident, Godley was insured under his parents' Allstate homeowner's policy (the Godley policy). After being served with the lawsuit, Godley tendered the claim to Allstate for defense and indemnification.

As the Court noted above, Allstate filed a declaratory judgment action in this Court seeking an order from the Court declaring it has neither a duty to defend nor a duty to indemnify Godley for the claims and damages asserted in an underlying state-court negligence lawsuit. The Godley policy sets forth, in relevant part, the following provisions and exclusions:

**Section II – Family Liability And Guest Medical Protection**

**Family Liability Protection – Coverage X**

**Losses We Cover Under Coverage X:**
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

**\*\*\*\***

**Guest Medical Protection – Coverage Y**

**Losses We Cover Under Coverage Y:**

**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital,

3

licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals.

****

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or
2. off the **insured premises**, if the **bodily injury**:
a) arises out of a condition on the **insured premises** or immediately adjoining ways;
b) is caused by the activities of an **insured person** or a **residence employee**;

****

The Policy includes the following definitions:

**Definitions Used In This Policy**
Throughout this policy, when the following words appear in bold type, they are defined as follows:

5.  **Bodily injury –** means physical harm to the body, including sickness or disease, and resulting death . . . .

****

8. **Property damage** – means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

****

The Policy also includes the following exclusions:

**Losses We Do Not Cover Under Coverage X:**

****

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer.

****

**Losses We Do Not Cover Under Coverage Y:**

****

> 5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer.

Allstate subsequently filed a motion for summary judgment, Mayers and Godley filed responses in opposition, and Allstate filed a reply. The parties then responded to the Court's order to show cause why the matter should not be dismissed in light of the Fourth Circuit's decision in *Trustgard Ins. Co. v. Collins*, 942 F.3d 195 (4th Cir. 2019). The Court, having been fully briefed on the relevant issues, will now adjudicate the motion.

## III.    STANDARD OF REVIEW

### A.    *Declaratory Judgment Act*

Allstate brings this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Acknowledging Article III's limitation of federal jurisdiction to "cases of actual controversy," the Declaratory Judgment Act limits its application to "cases of actual controversy," meaning that it is "operative only in respect to controversies which are such in the constitutional sense." *Aetna Life Ins. Co. of Hartford, Conn. V. Haworth*, 300 U.S. 240 (1937) (internal quotation omitted). A declaratory judgment action presents a justiciable controversy where "the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

5

issuance of a declaratory judgment." M*edImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (internal citation omitted) (footnote omitted).

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Nevertheless, "[i]t is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism." *United Capital Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). "The declaratory judgment action is designed to allay exactly the sort of uncertainty that flows from the threat that ambiguous contractual rights may be asserted." *Id.*

A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (internal citation omitted).

### B.    *Summary Judgment*

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing,

however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Rule 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A party asserting that a fact is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Rule 56(c)(1)(A). A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

"[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1996). "Summary judgment is proper only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). The court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### C.    *South Carolina Insurance Law*

Under South Carolina law, "[i]nsurance policies are subject to the general rules of contract construction." *Nationwide Mut. Ins. Co. v. Commercial Bank*, 479 S.E.2d 524, 526 (S.C. Ct. App.

1996). "The Court must give policy language its plain, ordinary[,] and popular meaning." *Diamond State Ins. Co. v. Homestead Indus. Inc.*, 456 S.E.2d 912, 915 (S.C. 1995). "[T]he meaning of a particular word or phrase is not determined by considering the word or phrase by itself, but by reading the policy as a whole and considering the context and subject matter of the insurance contract." *Yarborough v. Phoenix Mut. Life Ins. Co.*, 225 S.E.2d 344, 349 (S.C. 1976) (citing 13 Appleman Insurance Law and Practice § 7383 at 43–45 (1976)).

"An insurer's obligation under [an insurance policy] is defined by the terms of the policy and cannot be enlarged by judicial construction." *South Carolina Ins. Co. v. White*, 390 S.E.2d 471, 474 (S.C. Ct. App. 1990). But, "ambiguous or conflicting terms in an insurance policy must be construed liberally in favor of the insured and strictly against the insurer." *Diamond State Ins. Co.*, 456 S.E.2d at 915.

The extent to which courts interpret the language of an insurance policy differently is evidence of ambiguity. *Greenville Cty. v. Ins. Reserve Fund*, 443 S.E.2d 552, 553 (S.C. 1994). Courts may look to a dictionary to decipher the meaning of ambiguous, undefined terms. *Id.* Nevertheless, "if the intention of the parties is clear, courts have no authority to torture the meaning of policy language or to extend or defeat coverage that was never intended by the parties." *Diamond State Ins. Co.*, 456 S.E.2d at 915.

"Where a motion for summary judgment presents a question concerning the construction of a written contract, the question is one of law if the language employed by the contract is plain and unambiguous." *Moss v. Porter Bros.*, 357 S.E.2d 25, 27 (S.C. Ct. App. 1987). "Summary judgment is proper in such a case where the intention of the parties regarding the legal effect of the contract may be gathered from its four corners." *Id.*

8

It is the insured's burden to establish that a claim falls within the coverage of an insurance contract. *Gamble v. Travelers Ins. Co.*, 160 S.E.2d 523, 525 (S.C. 1968). Alternatively, "[e]xclusions in an insurance policy are always construed most strongly against the insurer" and "the insurer bears the burden of establishing the exclusion [to coverage]." *Boggs v. Aetna Cas. & Sur. Co.*, 252 S.E.2d 565, 568 (S.C. 1979).

## IV.    DISCUSSION AND ANALYSIS

### A.    *Declaratory Judgment Authority*

In determining whether Allstate has a duty to defend and indemnify in connection with the underlying automobile accident, this case raises issues of law whose resolution would "serve a useful purpose in clarifying and settling the legal relations at issue[.]" *Cont'l Cas. Co. v. Fuscardo*, 35 F.3d 963, 966 (4th Cir. 1994). The Supreme Court has concluded an actual controversy exists between an insurer, on the one hand, and a third party injured by the insured, on the other, when the insurer has initiated a declaratory judgment action against both its insured and the injured party seeking court determination of its obligations under an insurance policy. *Md. Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941).

#### 1.    *The impact of* **Trustgard**

As noted above, the parties responded to the Court's order to show cause why the matter should not be dismissed in light of the Fourth Circuit's decision in *Trustgard*.

Allstate, in its response, notes the facts of this case are distinguishable from the facts in *Trustgard* because it seeks a declaration it has no duty to defend and indemnify as opposed to the plaintiff in *Trustgard* that sought a declaration only as to its duty to indemnify. Godley and

Mayers, in their responses, contend inasmuch as liability in the underlying state-court negligence action remains undetermined, any opinion from this Court would be advisory.

Here, because Allstate asks the Court to declare whether it is obligated to defend Godley in the state court negligence action—not just whether it would be obligated to indemnify the plaintiff in the underlying state-court action as was the case in *Trustgard*—the injury to Allstate is not too hypothetical and contingent in nature to fail to establish standing. *See Trustgard Ins. Co.*, 942 F.3d at 200 (noting "suits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains determined.").

### a.    *Whether an insurer has a duty to indemnify if it does not have a duty to defend*

"[U]nder South Carolina law[,] a liability insurance company's obligation to defend its insured is determined by the allegations of the underlying complaint." *Ellet Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 387–88 (4th Cir. 2001). "If the alleged facts in the complaint fail to bring the case within the policy coverage, the insurer is free of the obligation to defend." *R.A. Earnhardt Textile Mach. Div. Inc. v. S.C. Ins. Co.*, 282 S.E.2d 856, 857 (S.C. 1981).

On the other hand, "the duty to indemnify is based on evidence found by the factfinder[.]" *Id.* Thus, if an insurer has no duty to defend, it necessarily has no duty to indemnify. *See Penn-Am Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) ("Although an insurer's duty *to indemnify* will depend on the resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty *to defend* because the allegations, even when taken as proved, would fall outside the policy's coverage.

Consequently, the Court concludes it may, in its discretion, enter a declaratory judgment in this action and proceed with its analysis regarding Allstate's motion for summary judgment.

10

### B.    *Allstate's Motion for Summary Judgment*

Allstate argues the Godley policy is unambiguous and the "Estate's claims against [Godley] arise out of the ownership, maintenance, use, and/or entrustment of a motor vehicle and, thus are excluded" from coverage under the Coverage X and Coverage Y automobile exclusions in the Godley policy.  Mot. at 7.  Specifically, Allstate contends Dreher's death "arose out of the operation of a motor vehicle and, thus, would be excluded under" the Godley policy's automobile-exclusion provision.  *Id.*

Mayers and Godley, on the other hand, contend the Godley policy is ambiguous, and this ambiguity should be resolved in Godley's favor.  In support of this contention, they assert the policy is open to multiple, reasonable interpretations.

Here, no relevant South Carolina authority has addressed the issue raised by this set of facts and circumstances.  But, several state appellate courts have addressed this exact issue and have concluded identical language in an Allstate homeowner's insurance policy's automobile-exclusion provision is unambiguous and precludes coverage.

For instance, the Georgia Court of Appeals, as a matter of first impression in *Sauls v. Allstate Property & Cas. Ins. Co.*, 757 S.E.2d 455 (Ga. Ct. App. 2014), concluded an insured's Allstate homeowner's insurance policy's automobile-exclusion provision precluded coverage regarding claims arising from a motor vehicle accident under facts comparable to the instant case.  In *Sauls*, teenagers Cheyenne Sauls (Sauls) and Jason Lark (Lark) visited the home of their friend, Justin McAllister (McAllister).  *Id.* at 457.  Sauls and Lark consumed alcoholic drinks at McAllister's home.  Lark, driving his parent's vehicle, left McAllister's home with Sauls and

collided with another vehicle. *Id.* During the collision, Sauls was ejected from the vehicle and sustained fatal injuries. *Id.*

Sauls's parents sued, among others, McAllister in a wrongful death action. *Id.* at 456–57. Allstate, the homeowner's insurance provider of McAllister's father, filed a declaratory judgment action seeking a determination of its obligations under the policy (the McAllister policy). *Id.* at 456. The McAllister policy noted it "does not cover bodily injury 'arising out of the ownership, maintenance, use, occupancy, renting, loading, entrusting, loading or unloading of any motor vehicle or trailer.'" *Id.* at 457 (quoting the McAllister policy). The trial court ultimately concluded all of Sauls's parents' claims "were for their daughter's fatal injuries, that the injuries arose out of the use of a motor vehicle, and therefore, [their] claims [were] excluded from the policy's coverage." *Id.* (footnote omitted).

The court of appeals affirmed the trial court and noted "[b]ecause [Saul's parents] seek medical expenses and other damages for their daughter's bodily injury that arose out of the use of a motor vehicle, there is no coverage under either the policy's Family Liability Protection or Guest Medical Protection." *Id.* at 459–60.

Similarly, the Ohio Court of Appeals addressed, for the first time, a similar set of facts and circumstances and arrived at the same conclusion as the *Sauls* court. In *Allstate Insurance Company v. Bowman*, 120 N.E.3d 1285 (Ohio Ct. App. 2018), the court concluded an insured's Allstate homeowner's policy's (the Bowman policy) automobile-exclusion provision precluded coverage on claims arising from a motor vehicle accident.

In *Bowman*, Michelle Schuster (Schuster) caused an automobile accident in which Joseph Oliphant (Oliphant) suffered serious injuries and Amber Rooks (Rooks) was killed. *Id.* at 1286.

Allstate's insured, Kevin Bowman (Bowman), allegedly spiked Schuster's drink and/or provided numerous drugs to her prior to the automobile accident.  *Id.*

Rooks's Estate and Oliphant filed separate lawsuits "against Bowman alleging that he caused or contributed to Schuster becoming impaired before she operated her vehicle on the day of the accident."  *Id.* (footnote omitted).  Bowman tendered his defense of the lawsuit to his homeowner's insurance policy holder, Allstate, which filed a complaint for declaratory judgment seeking a determination it was not required to defend or indemnify Bowman for damages or injuries relating to the automobile accident.  *Id.*

The Bowman policy contained the following automobile-exclusion provision: "'We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any vehicle or trailer.'"  *Id.* at 1289 (quoting the Bowman policy) (emphasis modified).  Subsequently, Allstate filed a motion for summary judgment asserting it lacked any duty to defend or indemnify Bowman against Rooks's Estate or Oliphant because the Bowman policy excluded coverage for losses arising out of the use of any motor vehicle.  *Id.* at 1287.

The trial court granted Allstate's motion for summary judgment, and Rooks's Estate and Oliphant appealed.  *Id.*  The court of appeals affirmed the trial court's judgment and held that the terms in the policy were "clear and precise" and "conclude[d] that the motor vehicle exclusion is not ambiguous" and "must be enforced as written, which is to exclude from coverage bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer arising out of *any* motor vehicle."  *Id.* at 1291.

Returning to the parties' arguments regarding the instant motion for summary judgment before the Court, Allstate argues the Godley policy is unambiguous and precludes coverage. Mayers and Godley, on the other hand, aver the Godley policy is ambiguous because it is open to multiple, reasonable interpretations. Thus, the issue before the Court is whether the Godley policy is ambiguous.

### 1.    Whether the Godley policy is ambiguous

Contrary to Mayers and Godley's contentions, the automobile-exclusion provision in the Godley policy is unambiguous. The automobile-exclusion provision in the Godley policy reads as follows: "We do not cover bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." Godley policy (emphasis modified). The word "any" is unambiguous. According to Merriam-Webster, "any" is defined as: "one or some indiscriminately of whatever kind." Merriam-Webster, https://www.merriam-webster.com/dictionary/any (last visited Sept. 14, 2021). Consequently, when the automobile-exclusion refers to "any motor vehicle[,]" Godley policy, it is referring to an indiscriminate automobile of any kind.

Mayers and Godley counter, however, "[t]he only activity in which the exclusion for any vehicle is applicable is the 'loading or unloading of any motor vehicle or trailer.'" Mayers's Resp. in Opp'n at 10; *see also* Godley's Resp. in Opp'n at 11. This proposed reading of the automobile-exclusion provision is unpersuasive. In the Godley policy's automobile-exclusion provision, the commas divide separate, injury-causing activities such as ownership, maintenance, use, occupancy, renting, loaning, entrusting, and loading or unloading, as those activities relate to any

14

vehicle. The Court declines to view the words "loading or unloading[,]" Godley policy, in a vacuum and ignore the other injury-causing activities listed in the automobile-exclusion provision.

Mayers and Godley further propose a reasonable reading of the automobile-exclusion provision would be it precludes coverage for only an insured's vehicle's involvement in an accident, but not any vehicle whatsoever. Hence, according to Mayers and Godley, as Godley's vehicle was uninvolved in the accident involving Dreher, the automobile-exclusion provision fails to apply to the case at hand. The Court likewise concludes this strained interpretation of the Godley policy unconvincing. As previously discussed, the word "any" is unambiguous, and when the Godley policy refers to "any motor vehicle[,]" Godley policy, it is referring to an indiscriminate automobile of any kind. The fact Logan's vehicle struck Dreher, as opposed to Godley's vehicle, is of no consequence to the Court's analysis. At bottom, a vehicle striking Dreher caused his death.

Hence, the Court concludes the automobile-exclusion provision in the Godley policy is unambiguous and applies to any vehicle whatsoever, regardless of the motor vehicle owner's identity or relationship with the insured.

### a.    *Whether the automobile-exclusion provision applies here*

Having determined that the automobile-exclusion provision is unambiguous, the question squarely before the Court is whether it applies to this case. Allstate contends Dreher's death "arose out of the operation of a motor vehicle and, thus, would be excluded under" the Godley policy's automobile-exclusion provision. Mot. at 7. Mayers and Godley, on the other hand, aver the "acts alleged against [Godley] in [Mayers's] [c]omplaint were 'arising from the . . . use' of alcohol [supplied] by Godley[,]" and, as alleged by Mayers in the state-court negligence action, "Godley did not provide a vehicle to [Logan], rather he provided alcohol to [Logan]." Mayers's Resp. in

15

Opp'n at 12; *see also* Godley's Resp. in Opp'n at 9–10. Thus, according to Mayers and Godley, inasmuch as they allege the intoxication of Logan at Godley's home was the proximate cause of Dreher's death, without a clear definition of "arising out of" and "arising from" in the Godley policy, Allstate is unable to dismiss their reasonable interpretation Dreher's death arose out of Godley's negligent act of supplying alcohol to Logan, and not a motor vehicle.

As the South Carolina Supreme Court has explained, insurance coverage turns on the cause of the injury, not the legal theory under which liability is asserted. *See McPherson By and Through McPherson v. Mich. Mut. Ins. Co.*, 426 S.E.2d 770, 772 (S.C. 1993) (concluding an automobile-exclusion provision in an insurance policy precluded coverage for a plaintiff's injuries where they arose from the defendant's ownership of the vehicle, but the complaint alleged the injuries arose from the failure to train and supervise police officers in the proper use of patrol cars). And, "for the purpose of construing an exclusionary clause in a general liability policy, 'arising out of' should be narrowly construed as 'caused by.'"). *Id.* at 771.

Dreher's injury, as was the case with the plaintiffs and decedents in *Sauls* and *Bowman*, was caused by the use of a motor vehicle. Even if Godley was a negligent host and allowed Logan, a minor, to consume alcohol while at his parents' home, the operation and use of an automobile caused the death of Dreher. *See generally* Compl. ¶ ("That on or about June 18, 2017, [Logan] was travelling too fast for conditions, failed to stop, failed to pay attention to the road in front of her, failed to keep a proper lookout[,] and violently struck [George as he] was lawfully walking on Westwoods Drive."). Accordingly, the Court concludes the automobile-exclusion provision applies to this case, and Allstate does not have a duty to defend Godley in the underlying

negligence lawsuit.  And, inasmuch as Allstate has no duty to defend Godley, no duty to indemnify exists.  *See* Section IV(A)(1)(a), *supra*.

At bottom, the Godley policy must be enforced as written, which is to exclude from coverage bodily injury or property damage caused by an automobile accident such as the one at issue here.  This does not mean, however, Godley is not liable to Mayers.  But, in the event Mayers recovers from Godley, she will do so without financial assistance from Allstate.

## V.    CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Allstate's motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

Signed this 14th day of September 2021, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

17